**The below described is SIGNED.**

**Dated: August 13, 2012**

_R. KIMBALL MOSIER_
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

Duane H. Gillman (#1194)
dgillman@djplaw.com
Penrod W. Keith (#4860)
pkeith@djplaw.com
Jessica Peterson (#11210)
jpeterson@djplaw.com
Patrick E. Johnson (#10771)
pjohnson@djplaw.com
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile:  (801) 415-3500
Attorneys for Duane H. Gillman, Chapter 7 Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>TWIN PEAKS FINANCIAL SERVICES, INC., aka KENNETH C. TEBBS, aka MNK INVESTMENTS, INC., and MNK INVESTMENTS,<br><br>         Debtor. | Bankruptcy Case Number<br>07-25399<br>07-25401<br>(Substantively Consolidated as 07-25399)<br><br>Chapter 7 |
| DUANE H. GILLMAN, as Chapter 7 Trustee,<br><br>         Plaintiff,<br><br>vs.<br><br>DEFENDANTS RE INSOLVENCY,<br><br>         Defendant. | Miscellaneous Adversary Proceeding<br>No. 11-08005<br><br>[Consolidated Proceeding Regarding Debtor's Insolvency]<br><br>Judge R. Kimball Mosier |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO ORDER
GRANTING SUMMARY JUDGMENT IN CONSOLIDATED PROCEEDING ON ISSUE
OF DEBTOR'S INSOLVENCY AND RELATED ISSUES**

This matter is before the Court upon the motion of the chapter 7 Trustee, Duane H. Gillman (the "Trustee"), for the entry of an order granting summary judgment on the Issue of Debtor's Insolvency in the above-captioned bankruptcy case and in the consolidated adversary proceeding pursuant to Fed. R. Bankr. P. 7056, and also pursuant to 11 U.S.C. §§ 323, 544, 547, 548 and 550, Fed. R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

On June 9, 2011, the Court consolidated certain adversary proceedings and opened a miscellaneous proceeding for the purpose of determining whether the Debtor was insolvent and related issues. (Misc. Proc. No. 11-08005, Dkt. 1). The Trustee designated his expert witness, Mark D. Hashimoto, on August 30, 2011. (Dkt. 2). The Trustee brought a Motion for Summary Judgment on or about November 15, 2011. (Dkt. 5). The Trustee filed a memorandum of points and authorities in support of the Motion (Dkt. 6), a Declaration of Mark D. Hashimoto in support of the Motion which included two expert reports dated October 8, 2010, and August 30, 2011, as more fully described below (Dkt. 4), a reply in support of the Motion (Dkt. 26), a Declaration of the Trustee in support of the Motion (Dkt. 27), a second Declaration of Mark D. Hashimoto in support of the Motion (Dkt. 28), a third Declaration of Mark D. Hashimoto in support of the Motion (Dkt. 35), a second Declaration of the Trustee in support of the Motion (Dkt. 36), a supplemental memorandum in support of the Motion (Dkt. 37), a supplemental reply in support of the Motion (Dkt. 41), a second supplemental memorandum in support of the Motion (Dkt. 44), and a fourth Declaration of Mark D. Hashimoto in support of the Motion which report included an Opinion 3 to Expert Report Dated October 8, 2011 (Dkt. 45).

The Court, having conducted hearings on the Motion and having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and after consideration of the Motion, the relief requested therein, and the responses thereto; and

this being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record at the hearing; and upon the record of the hearing, and all other pleadings and proceedings in this case, and it appearing that the relief requested in the Motion is in the best interests of the Debtor and the Estate and that the Order sought by the Trustee should be entered contemporaneously herewith, and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

## FINDINGS OF FACT

### JURISDICTION

1. This Court has jurisdiction over the subject matter and parties to this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (F), (H) and (O), 11 U.S.C. §§ 323, 544, 547, 548, and 550, Fed. R. Bankr. P. 7001 and DU Civ. R. 83-7.1(a).

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1409.

### ORDER FOR RELIEF

4. On November 9, 2007, an involuntary chapter 11 petition was filed by certain creditors of Twin Peaks Financial Services, Inc. ("Twin Peaks") and MNK Investments ("MNK") seeking to commence an involuntary chapter 11 case on behalf of both entities ("Petition Date"). (Case No. 07-25399, Dkt. 1).

5. On or about December 4, 2007, an order for relief under chapter 11 was entered for both Twin Peaks and MNK. Thereafter, on or about June 18, 2008, the two cases against

Twin Peaks and MNK (Twin Peaks and MNK are collectively referred to herein as "Debtor") were substantively consolidated under case no. 07-25399. (Case No. 07-25399, Dkt. 4).

6. The case was converted to chapter 7 upon motion of the United States Trustee and by agreement by the Debtor. (Case No. 07-25399, Dkt. 138).

7. The Trustee was appointed on or about July 2, 2008. (Case No. 07-25399, Dkt. 138).

## MISCELLANEOUS PROCEEDING ON ISSUE OF THE DEBTOR'S INSOLVENCY AND RELATED ISSUES

8. The Trustee brought numerous adversary proceedings under 11 U.S.C. §§ 547, 548 & 550 and related state law claims in late-November to early-December 2009. *See generally*, Case No. 07-25399, Dkt. 418-604.

9. Pursuant to Rule 42 Federal Rules of Civil Procedure, made applicable by Rule 7042 Federal Rules of Bankruptcy Procedure, in order to avoid unnecessary cost and delay and to avoid prejudice to parties, the Court ordered the consolidation of numerous adversary proceedings for hearing and trial on issues related to whether the Debtor was insolvent at the time of the transfers to defendants which the Trustee seeks to avoid in the adversary proceedings. (Case No. 11-08005, Dkt. 1).

## EXPERT TESTIMONY

10. The Trustee employed Mark D. Hashimoto ("Hashimoto") as an expert and the Estate's accountant to investigate the Debtor's financial solvency and capitalization for the two years prior to the petition date, Hashimoto reviewed extensive documents in order to formulate his opinions, and Hashimoto thereafter issued an expert report dated October 8, 2010. *See* Exhibit A to Dkt. 4, Declaration of Mark Hashimoto on Issue of Debtor's Insolvency, Nov. 15,

2011 ("Hashimoto Dec. re Insolvency Issue") (attaching **October 8 Expert Report** and listing documents relied upon at Exhibit 2); s*ee* Dkt. 35, Declaration of Mark D. Hashimoto in Support of Trustee's Rule 56(e) Supplemental Support Regarding Plaintiff's Motion for Summary Judgment on Issue of Debtor's Insolvency and on Ponzi Scheme Issue ("Hashimoto Dec.") at ¶¶ 4-7, 9, 12 (noting Hashimoto is also the Trustee's accountant for these proceedings and that he reviewed, analyzed and summarized as the Trustee's accountant the same documents he replied upon for his expert reports); Dkt. 36, Declaration of Duane H. Gillman in Support of Trustee's Rule 56(e) Supplemental Support Regarding Plaintiff's Motion for Summary Judgment on issue of Debtor's Insolvency and on Ponzi Scheme Issue ("Gillman Dec.") at ¶¶ 13-14 (noting Gillman hired Hashimoto as the Trustee's accountant).

11. The Trustee also employed Hashimoto as an expert to analyze the Debtor's solvency as of August 11, 2007, ninety days prior to the filing of the bankruptcy petition. Hashimoto reviewed extensive documents in order to formulate his opinions on the Debtor's solvency, and Hashimoto thereafter issued a second expert report dated August 30, 2011. *See* Exhibit B to Hashimoto Dec. re Insolvency (attaching **August 30 Expert Report** and listing documents relied upon at Exhibit 2).

12. Plaintiff served Hashimoto's October 8 and August 30, 2011 Expert Reports on the defendants in this proceeding ("Defendants") on August 30, 2011. (Case No. 11-08005, Dkt. 2).

13. None of the Defendants submitted a rebuttal expert report or retained a rebuttal expert. *See generally,* Case No. 11-08005 Docket.

14. None of the Defendants conducted discovery in the consolidated proceeding, nor have any of the Defendants sought to depose Hashimoto in the consolidated proceeding. *See generally,* Case No. 11-08005 Docket.

### SOURCES OF FUNDING FOR THE CONSOLIDATED DEBTOR

15. The Debtor was operated by K.C. Tebbs ("Tebbs") and Chad Palmer ("Palmer"). Ex. A to Hashimoto Dec. re Insolvency at 1.

16. Prior to the Debtor's bankruptcy filing on November 9, 2007, the Debtor's business operations consisted of the acquisition and sale of various pieces of real estate in Salt Lake and Utah Counties. Such real estate was acquired by loans from hard money lenders with some money advanced from the Debtor's bank accounts. *Id.*; Hashimoto Dec. at ¶ 13. The Debtor's business model was to borrow funds at a high interest rate, use those funds to purchase real property, and then sell the property at a profit to generate sufficient funds to service the debt and pay operating costs. Second Supp. Hashimoto Dec. ¶ 12 and attached Opinion 3.

17. In addition to the funds obtained from hard money lenders, the Debtor derived significant amounts of money from investment type loans acquired by the Debtor from certain third party individuals and business entities (referred to as "Investors"). These Investors made loans to the Debtor under promissory notes with maturity dates which usually consisted of thirty to sixty days, but in some instances were as short as seven days. Interest rates promised to Investors were 18% per annum plus an upfront loan fee of 2% to 5% of the amount loaned. The combination of the high interest rate plus the loan fees on such short term investments resulted in extremely high promised rates of return for Investors which equated to an effective annual rate of return of 30% to over 200% on the money loaned. Ex. A to Hashimoto Dec. re Insolvency at 1-2; Hashimoto Dec. at ¶¶ 14-17; Gillman Dec. at ¶¶ 7-22 (noting Gillman interviewed Investors,

SLC_1140694                                    6

consulted with Hashimoto, conducted 2004 Examinations of title companies, reviewed numerous records of the Debtor, and evaluated the Debtor, the Debtor's business practices, assets, liabilities and other financial affairs of the Debtor).

18. The hard money lenders were also promised interest rates of 15% to 18% per annum plus upfront loan origination fees of up to 10% of the money loaned. Ex. A to Hashimoto Dec. re Insolvency at 2; Hashimoto Dec. at ¶ 18.

19. Mark Hashimoto testified respecting Investors' note terms based on review of documentation accompanying Investor proofs of claim. The interest rate promised to Investors ranged from 15% to 20%, with the vast majority of Investors being promised an 18% per annum interest rate. In addition, most Investors were also promised loan origination fees which were as high as 7% of the amount loaned for terms which typically ranged from thirty to sixty days. Ex. A to Hashimoto Dec. re Insolvency at 4; Hashimoto Dec. at ¶¶ 25-26; Gillman Dec. at ¶¶ 7-12.

20. The annual rate of return to Investors, in some instances, exceeded 200%, and a weighted average annual rate of return for Investors was 82.71%. Ex. A to Hashimoto Dec. re Insolvency at 4; Hashimoto Dec. at ¶ 27; Gillman Dec. at ¶¶ 7-12.

21. Funds obtained from hard money lenders also carried repayment terms which in certain instances equaled or exceeded the rates promised to Investors. Examples of terms charged by hard money lenders include the following:

| Lender | Interest Rate | Loan Fee |
|---|---|---|
| Harbor Real Estate Asset Fund | 18% | 10% |
| Millenia Investment Corp. | 18% | 10% |
| Cottonwood Assets | 18% | 10% |
| Utah Mortgage Alliance | 15% | 5% |

Ex. A to Hashimoto Dec. re Insolvency at 4-5; Hashimoto Dec. at ¶¶ 28-29.

22. The Debtor was never given any capital contributions by its principals and/or owners. The Debtor's business relied solely on expensive borrowed funds to acquire property. Profits from the Debtor's business were insufficient to repay the cost of borrowed funds. Ex. A to Hashimoto Dec. re Insolvency at 5; Hashimoto Dec. at ¶ 30.

23. In addition, real estate owned by the Debtor never appreciated at a rate sufficient to service the acquisition costs. Based on statistical data compiled by the Federal Housing Finance Agency, housing prices in Utah increased by 14.60% in 2005, 17.12% in 2006, and 11.95% in 2007. Although this was a prosperous time in the Utah housing market, these rates of increase were significantly less than the Debtor's cost of funds which were promised to Investors and hard money lenders. Ex. A to Hashimoto Dec. re Insolvency at 5; Hashimoto Dec. at ¶ 31.

24. Due to the lack of capitalization of the Debtor, high acquisition costs of property and the Debtor's inability at any time during its existence to pay its debt from profits or property sales, the Debtor's liabilities owed to Investors and hard money lenders exceeded the value of its assets from its inception and specifically during the two years prior to the Debtor's petition date. The Debtor's level of insolvency continued to increase over time as additional borrowed funds were received by the Debtor. Ex. A to Hashimoto Dec. re Insolvency at 4-5; Hashimoto Dec. at ¶ 19, 32, 36-38;

25.     The Debtor owned assets with an estimated fair value of $21,448,836.00 and had debts with an estimated fair value of $44,948,349.00, leaving the Debtor insolvent with a net deficit of $23,499,512.00 as of August 11, 2007.  Ex. B to Hashimoto Dec. re Insolvency at 1-2; Hashimoto Dec. at ¶¶ 39-40.

26.     The Debtor's principals and owners made no capital contributions to fund the Debtor's business; therefore, the Debtor was completely reliant on expensive borrowings or profits generated from real property investments to fund operations and service debt.  Dkt. 45, Second Supp. Hashimoto Dec. at ¶ 11 and attached Opinion 3.

27.     The Debtor's business never generated sufficient profits or income to service its debt and operating costs.  In fact, the cash flow from real estate activity ran at a net deficit from November 2005 through the petition date.  Second Supp. Hashimoto Dec. at ¶ 13 and attached Opinion 3.

28.     The Debtor was engaged in a business or transaction for which any property remaining with the Debtor was an unreasonably small capital from its inception where the Debtor's shareholders contributed no capital and the Debtor could never generate profits sufficient to pay the obligations owed to creditors.  The lack of capitalization, or undercapitalization, prevented borrowed funds from being used to acquire property but rather required that such funds be used to pay other creditors/Investors.  Hashimoto Dec. re: Insolvency at 4; Hashimoto Dec. at ¶¶19, 36-38; Second Supp. Hashimoto Dec. at ¶ 14.

29.     The Debtor had an unreasonably small capital from the outset to sustain operations based on its business model and was only able to operate for a period of two years because it continued to borrow funds from Investors to pay its prior obligations.  Second Supp. Hashimoto Dec. ¶ 14 and attached Opinion 3.

30. Based on the foregoing, the Debtor had unreasonably small capital from its inception, and the business model and operating history revealed that the operations were not sustainable except through continued borrowings. Second Supp. Hashimoto Dec. at ¶ 17 and attached Opinion 3.

31. Based on the foregoing, as of August 11, 2007, Twin Peaks was insolvent with the sum of its debts greater than the sum of its assets at fair value. Ex. B to Hashimoto Dec. re Insolvency at 1-2; Hashimoto Dec. at ¶¶ 39-47.

## CONCLUSIONS OF LAW

### THE DEBTOR WAS INSOLVENT IN THE NINETY DAYS PRE-PETITION

32. The Debtor was insolvent within the meaning of the Bankruptcy Code within the ninety (90) days immediately preceding the date of the filing of the petition. The elements of 11 U.S.C. § 547(b)(3) are met.

33. There is no evidence to rebut the presumption of the Debtor's insolvency ninety (90) days prior to the entry of the order for relief.

34. As of August 11, 2007 until the filing of the Debtor's bankruptcy petition, and at all times during this period, the Debtor's financial condition was such that the sum of the Debtor's debts was greater than all of such entity's property at a fair valuation. 11 U.S.C. § 101(32).

35. The Debtor was insolvent in the ninety days pre-petition.

### THE DEBTOR WAS INSOLVENT AND UNDERCAPITALIZED AT ALL TIMES

36. The Debtor was insolvent within the meaning of the Bankruptcy Code since the commencement of its operations.

37.     The elements of 11 U.S.C. § 548(a)(1)(B)(ii)(I) are met because, since the Debtor's inception, the Debtor's financial condition was such that the sum of the Debtor's debts was greater than all of such entity's property at a fair valuation.  11 U.S.C. § 101(32).

38.     The elements of 11 U.S.C. § 548(a)(1)(B)(ii)(II) are met.  The Debtor was engaged in a business for which it had unreasonably small capital because, after considering and evaluating all sources of the Debtor's income, the Debtor was unable to generate sufficient profits from the operation of its business to sustain its operations, including paying operating costs and debt service.  The Debtor's owners and principals contributed no capital to the Debtor's business.  *See Peltz v. Hatten*, 279 B.R. 710, 744 (D. Del. 2002); *In re Taubman,* 160 B.R. 964, 986 (Bankr. S.D. Ohio 1993) (citing *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.),* 124 B.R. 984, 998 (Bankr. S.D. Ohio 1990) (undercapitalization analysis requires a court to examine the ability of the debtor to generate enough cash from operations and sales of assets to pay its debts and remain financially stable)).

39.     There is no evidence to rebut the Debtor's insolvency from its inception.

40.     The Debtor was insolvent and undercapitalized since its inception.

**---END OF FINDINGS AND CONCLUSIONS---**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2012, a true and correct copy of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO ORDER GRANTING SUMMARY JUDGMENT IN CONSOLIDATED PONZI SCHEME ISSUE** was served via ECF Notification on to the following:

Jason D. Boren - borenj@ballardspahr.com, ivoryl@ballardspahr.com, saltlakedocketclerk@ballardspahr.com

Kenneth L. Cannon - kcannon@djplaw.com, khughes@djplaw.com

Derek A. Coulter - coulterlaw@yahoo.com, derekcoulter@yahoo.com; rtateoka@coulterlaw.biz; jgerth@coulterlaw.biz; rbrown@coulterlaw.biz; sfitt@coulterlaw.biz; jbrown@coulterlaw.biz

Burton G Davis - bdavis@djplaw.com

Ian Davis - idavis@djplaw.com

Duane H. Gillman - dhgnotice@djplaw.com

Craig T. Jenson - craig@oblawpc.com

Patrick E Johnson - pjohnson@djplaw.com

Penrod W. Keith - pkeith@djplaw.com, khughes@djplaw.com

Matthew L. Moncur - moncurm@ballardspahr.com, goodalem@ballardspahr.com;saltlakedocketclerk@ballardspahr.com

Jessica G Peterson - jpeterson@djplaw.com, khughes@djplaw.com

                                                             /s/ Kristin Hughes
                                                             Durham Jones & Pinegar